**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4518-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL M. PAGE,

    Defendant-Appellant.

_____

Submitted June 1, 2017 - Decided July 3, 2017

Before Judges Lihotz and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 15-043.

Marshall, Bonus, Proetta & Oliver, attorneys for appellant (Jeff Thakker, of counsel and on the brief; Colin E. Bonus, on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Daniel Page appeals from a May 9, 2016 order adjudicating him guilty of failure to maintain lane N.J.S.A. 39:4-

88(b) and driving while intoxicated (DWI) N.J.S.A. 39:4-50. We affirm.

On November 12, 2014, at approximately 11:55 p.m., Officer George Jadue of the Mount Olive Township Police Department was heading westbound on Route 46, when he observed a vehicle traveling in the left lane jerk over the yellow line and back into its lane. Officer Jadue continued to follow the vehicle and activated his Motor Vehicle Recorder (MVR) to record the erratic driving before effectuating a motor vehicle stop.

Upon encountering defendant in his vehicle, Officer Jadue noticed his speech was slow and his eyes were "watery and bloodshot." Officer Jadue asked if defendant had consumed anything and defendant responded he consumed two beers at a bar. Officer Jadue instructed defendant to exit his car to perform field sobriety tests. The officer asked defendant if he would have difficulty performing the tests, and defendant replied, "no, no, no."

As Officer Jadue administered the sobriety tests, he noted defendant's eyes were still bloodshot and watery, and he was unable to maintain his balance. Defendant failed a heel-to-toe test and lost his balance while turning around. Officer Jadue also administered a one-leg stand test and defendant struggled to keep his left foot raised and did not properly follow instructions.

Officer Jadue noted defendant swayed and lifted his right arm over six inches and still lost his balance.

Officer Jadue placed defendant under arrest for DWI and read him his <u>Miranda</u> warnings. The officer testified he smelled an odor of alcohol emanating from defendant during the field sobriety tests, and when he placed defendant in the police vehicle, there was an odor inside the vehicle.

Once at police headquarters, Officer Jadue obtained defendant's consent to a breath test, but as the officer began entering data into the Alcotest machine a "solution change" warning was indicated. Thus, Officer Jadue transported defendant to the New Jersey State Police barracks in Netcong, which had an Alcotest machine. The officer and defendant arrived at the barracks at 1:33 a.m. There, Trooper Andrew Berwise operated the Alcotest machine. The first machine "froze," and a second machine was utilized to administer the breath test to defendant. During the testing, Officer Jadue left defendant with Trooper Berwise to contact his police department to report his location and status.

Trooper Berwise remained with defendant at all times and observed him before and during administration of the Alcotest. The Alcotest results yielded a blood alcohol concentration (BAC) of .15 percent at 2:52 a.m. and 2:55 a.m.

On October 19, 2015, a trial occurred in the municipal court. The State offered the testimony of Officer Jadue, Trooper Berwise and Herbert Leckie, an expert in the administration of sobriety tests. Defendant adduced expert testimony of Dr. Fuwaz Nesheiwat, a podiatrist, to explain why defendant failed the field sobriety tests. Defendant was convicted of DWI and failure to maintain his lane of travel. He appealed and a trial de novo occurred in the Law Division with the same outcome, resulting in the order he now appeals.

Defendant contends the following:

> I. THE CONFLICTING ACCOUNTS OF OFFICER JADUE AND TROOPER BERWISE PRECLUDED A FINDING BY "CLEAR AND CONVINCING EVIDENCE" THAT MR. PAGE WAS OBSERVED FOR [TWENTY] MINUTES PRIOR TO THE 2:50 A.M. BREATH TEST; BECAUSE THE EVIDENCE WAS NECESSARILY INSUFFICIENT, THIS COURT SHOULD REVERSE AND REMAND, WITH A DIRECTIVE TO THE LAW DIVISION TO SUPPRESS THE ALCOTEST RESULTS AND DISMISS THE "PER SE" DWI CHARGE.

> II. THE LAW DIVISION DID NOT ADDRESS THE REASON FOR THE DELAY IN THE BREATH-TESTING; MR. PAGE ESTABLISHED REASONABLE DOUBT UNDER STATE V. TISCHIO, THEREBY MANDATING ACQUITTAL ON THE "PER SE" DWI CHARGE.

> III. HAVING PREVIOUSLY GRANTED HOLUP RELIEF, IT WAS AN ABUSE OF DISCRETION TO DENY DISCOVERY ON THE ALCOTEST MACHINE(S); THIS COURT SHOULD REVERSE THE ERRONEOUS DISPOSITION OF MR. PAGE'S RIGHT TO COURT-ORDERED DISCOVERY.

> IV. A MUNICIPAL COURT CANNOT HEAR THE DEFENSE UNLESS AND UNTIL THE STATE HAS CONCLUDED ITS

A-4518-15T2

CASE AND THE DEFENSE HAS [BEEN] GIVEN A CHANCE TO RAISE APPROPRIATE MOTIONS; THE PROCEEDINGS BELOW ARE A NULLITY AS THE MUNICIPAL COURT DISPENSED WITH THE PRESUMPTION OF MR. PAGE'S INNOCENCE.

V. THE LAW DIVISION'S FINDINGS ON MR. PAGE'S "INTOXICATION" AND LANE-MAINTENANCE ARE INSUFFICIENT; SINCE THERE WAS REASONABLE DOUBT, HIS OBSERVATION-BASED CONVICTIONS (FOR FAILURE TO MAINTAIN LANE AND DWI) SHOULD BE REVERSED.

We begin by reciting our scope of review. In reviewing a trial court's decision on a municipal appeal, we determine whether sufficient credible evidence in the record supports the Law Division's decision. State v. Johnson, 42 N.J. 146, 162 (1964). Unlike the Law Division, which conducts a trial de novo on the record pursuant to Rule 3:23-8(a)(2), we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). In addition, under the two-court rule, only "a very obvious and exceptional showing of error["] will support setting aside the Law Division and municipal court's "concurrent findings of facts[.]" Id. at 474. However, when issues on appeal turn on purely legal determinations, our review is plenary. State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011), certif. denied, 209 N.J. 430 (2012). We do not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). We defer to the trial court's

credibility findings. State v. Cerefice, 335 N.J. Super. 374, 383 (App. Div. 2000).

## I.

Defendant argues the accounts of Officer Jadue and Trooper Berwise conflicted to a degree there was insufficient evidence for the trial judge to conclude clearly and convincingly defendant was observed for the requisite twenty minutes necessary for the Alcotest results to be valid. We disagree.

The Supreme Court has held the valid results of an Alcotest to be "generally scientifically reliable" to support a per se violation of driving while intoxicated. State v. Chun, 194 N.J. 54, 65, cert. denied, Chun v. New Jersey, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008). The State must show "(1) the [Alcotest] device was in working order and had been inspected according to procedure; (2) the operator was certified; and (3) the test was administered according to official procedure." Id. at 134.

The results of the test and adherence to appropriate procedure must be proven "by clear and convincing proof." State v. Campbell, 436 N.J. Super. 264, 270 (2014). The State may meet its burden by testimony from the operator of the machine that in the twenty minutes preceding the test the subject did not "ingest, regurgitate or place anything in his or her mouth that may compromise the

reliability of the test results." State v. Ugrovics, 410 N.J. Super. 482, 489-90 (App. Div. 2009). The operator of the Alcotest machine must "observe the test subject for the required twenty minute period of time to ensure that no alcohol has entered the person's mouth while he or she is awaiting the start of the testing sequence." Chun, supra, 194 N.J. at 79, cert. denied, 555 U.S. 825, 129 S. Ct. 158, 172 L. Ed. 2d 41 (2008).

Here, the trial judge addressed and rejected defendant's claim the testimony of the officer and the trooper conflicted. The judge stated:

> In the case at bar, Trooper Berwise gave credible testimony that he continuously observed defendant for twenty minutes prior to administering the Alcotest. Contrary to defendant's assertion, the testimony concerning the twenty-minute observation period, by both Trooper Berwise and Officer Jadue, was not contradictory. Officer Jadue testified the trooper was with defendant the whole time. In the [twenty-minute] period prior to administering the Alcotest, Trooper Berwise also made sure that defendant did not have any objects in his mouth and that defendant did not burp, hiccup, or do anything to contaminate the breath sample.

The transcripts of each officer's testimony do not demonstrate any contradiction and support the trial judge's conclusion. Officer Jadue testified he began the initial observation period when the first machine froze and then left defendant with Trooper Berwise to contact police headquarters and

clearly stated: "The trooper was there the entire time, because the room was open." Likewise, Trooper Berwise's testimony was the same:

> Q And you mentioned the [twenty-minute] observation period. Did you conduct that, uh, observation period?
>
> A Yes.

The trial judge's findings are clearly supported by substantial and credible evidence in the record. Defendant's conviction for DWI on a per se basis based on the Alcotest results is affirmed.

## II.

Defendant challenges his conviction by asserting the trial judge did not address the reason for the delay in administering the Alcotest. We find this argument unavailing.

Our Supreme Court has held breath tests "must be taken 'within a reasonable time' after the arrest." State v. Tischio, 107 N.J. 504, 521 (1987). "[P]roof of operation of a motor vehicle, coupled with a blood alcohol level of .10% or greater taken from a breath or blood test administered within a reasonable period of time after operation constitutes a per se violation of the statute." State v. Snyder, 337 N.J. Super. 59, 65 (App. Div. 2001). There is no bright line limitation for administering the test after arrest. See State v. Dannemiller, 229 N.J. Super. 187, 189 (App.

Div. 1988). The purpose of the reasonable time period requirement is to prevent "prolonged detention of a motorist by the police in the mistaken belief that the blood-alcohol level would then produce a result more favorable to the State." Id. at 190. Thus, each case is reviewed "on an individual basis to determine whether the motorist's rights have been violated by undue delay" or a "reason to doubt" the validity of the test results. Ibid.

Defendant argues the State did not explain the reasonableness for the delay in administering the Alcotest and when two Alcotest machines failed to function, he should have been offered a blood test as an alternative. See N.J.S.A. 39:4-50.2(c) (providing police may make an independent test available to a defendant) see also State v. Hicks, 228 N.J. Super. 541, 549-50 (App. Div. 1988), certif. denied, 127 N.J. 324 (1990).

Defendant does not claim prejudice or violations of his rights resulted from the delay in administering the test. Instead, he asserts the State has not provided a reason for the delay, making it unreasonable.

The trial judge properly concluded the delay was reasonable because the test "was administered less than three hours after [d]efendant was stopped, which is less than the four and [one-half] hour period of time deemed reasonable in Samarel." The trial judge relied on our decision in State v. Samarel, 231 N.J.

Super. 134, 142-43 (App. Div. 1989), where we held a four and one-half hour delay between arrest and the breath test reasonable, because the defendant failed to demonstrate a prejudice by virtue of the delay.  Similarly, the trial judge here noted "defendant has not demonstrated that he was prejudiced by the lapse of time or that his detention was unduly prolonged."

The testimony of Officer Jadue and Trooper Berwise supports the trial judge's conclusion the delay was borne of good faith difficulties, namely, two malfunctioning Alcotest machines located in two different locations.  Indeed, not only was defendant driven to Mount Olive police headquarters and then transported to the State Police barracks in Netcong, occasioning the delay, the mandated twenty-minute observance preceding the valid Alcotest added to the delay.  These difficulties do not support a narrative of a motive to delay to produce a favorable Alcotest result.

The evidence supports the trial judge's conclusions the delay was reasonable and the absence of a corresponding prejudice to defendant.  We find no reason to disturb the trial judge's finding.

## III.

Defendant argues the court abused its discretion by denying his motion to compel discovery regarding the Alcotest machines. We find little merit in this claim.

"[T]he liberal approach to discovery in criminal cases is applicable in municipal court cases." State v. Stein, 225 N.J. 582, 594 (2016). A defendant, "on written notice to the municipal prosecutor . . . shall be provided with copies of all relevant material. . . ." R. 7:7-7(b). "In all cases in which an Alcotest device is used, any Alcotest data shall, upon request, be provided for any Alcotest 7110 relevant to a particular defendant's case in a readable digital database format generally available to consumers in the open market." R. 7:7-7(g).

"Discovery in a municipal court case, like in a criminal case, 'is appropriate if it will lead to relevant' information." Stein, supra, 225 N.J. at 596 (quoting State v. Hernandez, 225 N.J. 451, 462 (2016)). Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

Here, the trial judge noted:

> In this case during the first day of trial [the municipal judge] denied defendant's motion to compel discovery on a machine at the Netcong station that was not used to obtain a breath sample from the defendant due to the lack of testimony "as to how it might be relevant and probative."

He concluded there was no basis for the discovery sought by defendant because the State had provided everything related to the breath test reading actually utilized at trial.

We see no reason to question the trial judge's findings. Any evidence relating to the other machines the officers attempted to use would not help prove or disprove whether defendant drove under the influence of alcohol on the night of his arrest. No evidence suggests any other tests were completed, except for the test utilized by the State at trial, for which the State provided all discovery. Even though defendant claims the discovery was necessary because the reasons for the delay in the testing "have never been established," as we noted in the preceding section, there is ample evidence in the record explaining the reasons for the delay. In light of defendant's failure to demonstrate how he was prejudiced by the delay, the discovery regarding the other Alcotest machines was tenuous and irrelevant because it had no impact on the .15 percent BAC reading and per se DWI violation.

IV.

Defendant argues the court inappropriately allowed a defense witness to testify before the prosecution rested, thus depriving him of a presumption of innocence and due process. The State points out defendant did not object to this trial procedure at the time and is barred from raising it on appeal.

The trial judge recounted his review of the trial transcript, noting Trooper Berwise was not in court at the beginning of the trial session, but had been contacted by the prosecutor and was

en route to court. The trial judge noted defendant had ready witnesses and volunteered to take at least one out of order, namely, his expert witness. The trial judge concluded the trial procedure was valid because the municipal court judge had authority to call witnesses out of order. See N.J.R.E. 611(a). The trial judge also relied upon Rule 1:7-2, noting defendant did not object.

Counsel volunteering to present his witness out of order triggers the doctrine of invited error. Rule 1:7-2 states:

> For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor. . . . A party shall only be prejudiced by the absence of an objection if there was an opportunity to object to a ruling, order or charge.

The invited error doctrine bars a litigant from taking a position on appeal contrary to a position advanced in the trial court. State v. Pontery, 19 N.J. 457, 471 (1955). "'Elementary justice in reviewing the action of a trial [judge] requires that [the] court should not be reversed for an error committed at the instance of [the] party alleging it.'" State v. Scioscia, 200 N.J. Super. 28, 47 (App. Div. 1985) (alterations in original) (quoting Bahrey v. Poniatishin, 95 N.J.L. 128, 133 (E & A. 1920)).

13

It is clear neither the prosecutor nor the court suggested or compelled the defense to call its witnesses first. We can understand the reasonable decision of defense counsel to take an expert witness out of order given the monetary and time costs incurred associated with an idle expert witness. For these reasons, we reject defendant's argument he was deprived of his constitutional rights.

V.

Defendant asserts there was insufficient evidence to find him guilty beyond a reasonable doubt of DWI or failure to maintain his lane. He claims, "the municipal court did not make meaningful credibility determinations, as such fact-finding could not have resulted in a DWI conviction" and again cites to allegedly contradictory testimony by Officer Jadue and Trooper Berwise. Also, relying on State v. Woodruff, 403 N.J. Super. 620 (Law Div. 2008), defendant contends the State failed to prove failure to maintain lane, arguing there was reasonable doubt as to "how practicably the road could or should have been negotiated" because Officer Jadue and defendant drove a distance before pulling over and the trial judge made no findings about the road conditions.

Given our limited scope of review of credibility determinations and findings of fact by a trial court, we reject

these arguments because the record before us demonstrates the findings were based on substantial credible evidence.

Regarding the DWI charge, the Law Division quoted the municipal court's findings:

> Based on the officer's credible testimony as to his observations and the video tape, I am finding the defendant first guilty of failing to maintain lane, from going to the shoulder of the road, crossing over the solid line, and then coming to the right side, uh, dotted lines on Route 46 and going back and forth at least once - if not twice - and, in the court's judgment beyond - there's proof beyond a reasonable doubt the defendant did not properly maintain his lane on Route 46 on November 12, 2014.

The Law Division then said: "After reviewing the entire record, this court finds the testimony at trial by Officer Jadue, in combination with the S-2 evidence, the MVR, is sufficient to find that defendant beyond a reasonable doubt is guilty of failure to maintain lane."

These findings were clearly sufficient to meet the statutory definition for the conviction under N.J.S.A. 39:4-88(b), requiring "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Moreover, defendant's assertion the trial judge did not consider the road conditions is rebutted by the judge recounting his review of the MVR, which corroborates Officer Jadue's testimony stating he traveled "at least a mile and [one-

half] to two miles" behind defendant's vehicle before stopping him. Defendant does not point us to evidence either overlooked or misinterpreted by the trial judge relating to the road conditions.

Defendant also argues the State has not proven DWI beyond a reasonable doubt because the trial judge could not determine credibility from the municipal court transcripts. He also claims the municipal court "misunderstood" the testimony of defendant's expert as meaning defendant could not walk or stand rather than perform the field sobriety tests.

As noted above, the trial judge found defendant guilty of DWI making findings of guilt for a per se violation as well as on observational evidence. He stated:

> There is sufficient evidence in the record to convict the defendant of driving while intoxicated; both as a per se and observation violation. At the outset it should be noted that there is no dispute over whether the defendant was operating a motor vehicle at the time of his arrest. Moreover, the State submitted foundational documents required under <u>Chun</u>. Therefore, in light of defendant's .15 percent BAC reading from the Alcotest sample, there is sufficient evidence to find a per se violation of the statute.
>
> However, even if this court had suppressed the Alcotest reading, as the defendant asked, the testimony would have been sufficient to convict the defendant based on officer observation. Officer Jadue testified that the defendant had watery bloodshot eyes and

A-4518-15T2

smelled of alcohol. Defendant was unable to perform the walk and turn test and the one-leg stand test in accordance with Officer Jadue's instructions. In addition defendant told Officer Jadue that he had consumed at least two beers. Moreover, defendant's vehicle failed to maintain its lane. Consequently, the testimony sufficiently supports finding that the defendant's mental faculties and physical capabilities were substantially deteriorated while he was operating his vehicle. Considering the totality of all the evidence; based on the credible testimony regarding defendant's driving by Officer Jadue, the observations made by Officer Jadue; defendant's performance on the field sobriety tests, and defendant's admission to consuming alcohol, this court finds that defendant may also be found guilty under [the] observation standard.

Contrary to defendant's argument, we see no error in the trial judge's credibility determinations or inconsistency between the testimony of Officer Jadue and Trooper Berwise. Also, we do not see evidence the court misunderstood the testimony of defendant's expert witness. The evidence relied upon by the trial court supports its conclusion. Defendant violated N.J.S.A. 39:4-50.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION